UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FAUSTO BELLO and MELVIN CANO GALICIA,

                     Plaintiffs,

          -against-

PRO-LINE PUMPING CORP., NICOLAS
BARCIA a/k/a NICOLAS BARCIA ESCALANTE,
NICOLAS ONOFRE BARCIA-ESCALANTE, or
NICHOLAS and JESSICA LOPEZ-JARRIN a/k/a
JESSICA PAOLA LOPEZ-JARRIN or JESSICA
BARCIA,

                    Defendants.
---------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22 CV 4081 (RPK)(RML)

LEVY, United States Magistrate Judge:

        By order dated October 19, 2022, the Honorable Rachel P. Kovner, United States

District Judge, referred plaintiffs' motion for default judgment to me for report and

recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion

be granted, and that plaintiff Fausto Bello be awarded $415,530.48 and plaintiff Melvin Cano

Galicia be awarded $399,731.88 in damages, plus pre- and post-judgment interest, and $4,592 in

attorney's fees and costs.

### BACKGROUND AND FACTS

        Plaintiffs Fausto Bello ("Bello") and Melvin Cano Galicia ("Galicia" or "Cano,"

together with Bello, "plaintiffs") commenced this wage and hour action on July 12, 2022, against

defendants Pro-Line Pumping Corp. ("Pro-Line" or the "corporate defendant"), Nicolas Barcia

("Barcia") and Jessica Lopez-Jarrin ("Lopez-Jarrin," together with Barcia, the "individual

defendants," or together with the corporate defendant, "defendants") asserting claims under the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 301, *et seq.*, and the New York Labor Law

("NYLL") §§ 190, *et seq.* (Complaint, dated July 12, 2022 ("Compl."), Dkt. No. 1.) The individual defendants are alleged to be owners, officers and/or agents of Pro-Line Pumping Corp., a domestic corporation maintaining a principal place of business at 1723 Stein Drive, Bay Shore, New York. (Id. ¶¶ 13-29.) Defendants allegedly employed Bello as a concrete pump operator, maintenance mechanic, and laborer from approximately June 2015 through approximately June 2021 (id. ¶¶ 12, 55) and Galicia as a driver and concrete pump machine operator from approximately 2012 through approximately April 2021. (Id. ¶¶ 11, 40.)

All defendants were properly served with the summons and the complaint. (See Affidavit of Service of Emily M. Corbett, sworn to July 15, 2022, Dkt. No. 5; Affidavits of Service of Joe DeRosa, sworn to July 19, 2022, Dkt. Nos. 6, 7.) Defendants have failed to answer or otherwise move with respect to the complaint. Plaintiffs moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to all three defendants on September 8, 2022. (See Request for Certificate of Default, filed Sept. 8, 2022, Dkt. No. 8.) On September 13, 2022, the Clerk of the Court noted the defaults of all defendants. (See Clerk's Entry of Default, dated Sept. 13, 2022, Dkt. No. 10.) On October 18, 2022, plaintiffs moved for default judgment. (See Motion for Default Judgment, dated Oct. 18, 2022, Dkt. No. 12.) Judge Kovner referred plaintiffs' motion to me on October 19, 2022. (See Order, dated Oct. 19, 2022.)

Plaintiffs seek default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay them minimum wages and overtime compensation, (2) pay them spread of hours wages, (3) provide proper wage notices and wage statements, and (4) timely pay wages owed. (See Affirmation of Colin Mulholland, Esq. in Support of Plaintiffs' Application for Default Judgment, dated Oct. 18, 2022 ("Mulholland Aff."), Dkt. No. 12-1, ¶¶ 1, 2, 4; see also Compl. ¶¶ 70, 77, 81, 87, 90, 94, 97, 101.) Plaintiffs request an award of back pay in the

form of unpaid minimum wages, overtime wages, and spread of hours wages; damages of late pay; liquidated damages; statutory damages; pre- and post-judgment interest; and attorney's fees and costs.[1]  (Mulholland Aff. ¶ 4.)

## DISCUSSION

The Federal Rules of Civil Procedure provide a two-step process for plaintiffs to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).  Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit.  Here, as explained above, plaintiffs have demonstrated that they properly served defendants with the summons and complaint.  Plaintiffs have also demonstrated that they served the Motion for Default Judgment and accompanying submissions on defendants in compliance with Local Rule 55.2(c).  (See Affirmation of Service of Default Judgment Motion and Supporting Exhibits, dated Oct. 18, 2022, Dkt. No. 12-12.)

### A.  Liability

An entry of default alone is insufficient to establish liability, "since a party in

---

[1] Plaintiffs originally included claims and requests for relief for unlawful deductions under NYLL §§ 193(1), 193(2), FLSA §§ 201 et seq., and applicable regulations, as well as unlawful kickbacks under NYLL§ 198-b.  (See Compl. ¶¶ 104-120.)  These claims appear to have been dropped, as they were omitted from the Motion for Default Judgment and the supporting declaration.  (See Plaintiffs' Memorandum of Law in Support Plaintiffs' Application for Default Judgment, dated Oct. 18, 2022 ("Pls.' Mem."), Dkt. No. 12-2; see also Mulholland Aff.)

default does not admit mere conclusions of law."  Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted).  A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [plaintiffs'] allegations establish [defendants'] liability as a matter of law."  Id.

Plaintiffs have sufficiently pleaded factual allegations that give rise to liability for unpaid minimum and overtime wages under the FLSA and NYLL (Compl. ¶¶ 70-71, 77-79, 81-82, 86-88), unpaid spread of hours wages under the NYLL (Compl. ¶¶ 90-91), late payment of wages under NYLL (Compl. ¶¶ 101-102), and wage statement and notice violations.  (Compl. ¶¶ 95, 97.)  The extent to which plaintiffs can recover damages for these violations initially depends on whether: (1) their claims were timely; (2) they are covered employees under the FLSA and the NYLL; and (3) defendants were plaintiffs' employers under the FLSA and NYLL.

1.  Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, the complaint, which was filed on July 12, 2022, alleges willful violations of the FLSA.  (See Compl. ¶¶ 71, 78.)  Therefore, the FLSA's three-year statute of limitations applies.  Because Galicia and Bello allege that they were not properly paid wages

from July 12, 2019 through April 2022 and from July 12, 2019 through June 2022 respectively, I find that those claims are timely under the FLSA. However, the portions of plaintiffs' claims that occurred prior to July 12, 2019 are not timely under the FLSA.[2] Plaintiffs may only recover for the federal violations that occurred on or after July 12, 2019.

Regardless of willfulness, plaintiffs' claims must arise within six years prior to the filing of the complaint to be timely under the NYLL. See N.Y. LAB. L. §§ 198(3), 663(3). Plaintiffs argue that Governor Cuomo's Executive Order No. 202.8[3] tolled the statute of limitations for six months and fifteen days (198 days) from April 19, 2020 until November 3, 2020. (Memorandum of Law in Support of Plaintiffs' Application for Default Judgment, filed Oct. 18, 2022 ("Pls.' Mem."), Dkt. No. 12-2, at 12.) Plaintiffs contend that they may therefore recover an additional six months and fifteen days under the NYLL. (Id.)

In support of their argument, plaintiffs cite to a Second Department opinion that considered Executive Order No. 202.8 and noted "[a] toll suspends the running of the applicable period of limitation for a finite time period, and the period of the toll is excluded from the calculation of the relevant time period." (Id. (quoting Brash v. Richards, 149 N.Y.S.3d 560 (2d Dep't 2021)).) Courts in this Circuit have found that Executive Order 202.8 applies to federal

---

[2] Specifically, plaintiffs' claims arising during the period of November 27, 2015 through July 12, 2019 are not timely under the FLSA.

[3] On March 20, 2020, Governor Cuomo issued Executive Order 202.8, 9 N.Y.C.R.R. § 8.202.8, which declared a state of emergency due to the COVID-19 pandemic and "among other things, toll[ed] the time limits for filing legal actions as prescribed by the state's procedural laws." Bonilla v. City of New York, No. 20 CV 1704, 2020 WL 6637214, at *1 (E.D.N.Y. Nov. 12, 2020) aff'd, 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020). The Governor subsequently issued a series of nine Executive Orders extending this toll. See 9 N.Y.C.R.R. §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.63, 8.202.67. On October 4, 2020, the Governor issued Executive Order 8.202.67, which was the last extension of the toll to November 3, 2020. See 9 N.Y.C.R.R. § 8.202.67.

cases involving New York state law statutes of limitations.  See, e.g., Marquez v. Indian Taj, Inc., No. 20 CV 5855, 2022 WL 4485948, at *2 (E.D.N.Y. Aug. 5, 2022), report and recommendation adopted, 2022 WL 4485185 (E.D.N.Y. Sept. 27, 2022) (granting 228 days-worth of tolling on NYLL claims in federal court); Bowers v. City of Salamanca, No. 20 CV 1206, 2021 WL 2917672, at *6 (W.D.N.Y. July 12, 2021) (finding Executive Order 202.8 applicable to § 1983 cases brought in federal court); Citi Connect, LLC v. Loc. Union No. 3, No. 20 CV 5147, 2020 WL 5940143, at *3-4 (S.D.N.Y. Oct. 7, 2020) (holding that Executive Order 202.8 tolled the statute of limitations in a claim brought under the False Claims Act); Bonilla v. City of New York, No. 20 CV 1704, 2020 WL 6686531 (E.D.N.Y. Oct. 3, 2020).  Accordingly, I find that plaintiff may recover under the NYLL for claims that occurred on or after December 27, 2015.[4]

### 2.  Employee Coverage

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, a plaintiff in a wage and hour action must show that they were defendants' employee, and that defendants were employers subject to the coverage of each statute.  For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1); (g).  Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer.  An employer is defined as "any person acting directly or indirectly in the

---

[4] Plaintiffs' damages calculations seek to recover damages beginning on November 27, 2015, which exceeds the six-year statute of limitations on NYLL claims even when accounting for the requested 198 days of tolling; therefore, the damages have been adjusted to reflect the proper start date of December 27, 2015.  (See Fausto Bello Damages ("Bello Damages"), attached to Plaintiffs' Motion for Default Judgment, Dkt. No. 12-8; see also Melvin Cano Galicia Damages ("Galicia Damages"), attached to Plaintiffs' Motion for Default Judgment, Dkt. No. 12-9.)

interest of an employer in relation to an employee."[5]  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  Id. § 203(a).

"Employers are subject to FLSA when their employees are either engaged in commerce or in the production of goods for commerce ('individual coverage') or employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')."  Reyes v. Tacos El Gallo Giro Corp., No. 20 CV 3474, 2022 WL 940504, at *3 (E.D.N.Y. Jan. 25, 2022), report and recommendation adopted, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted)). "[T]o properly allege individual or enterprise coverage, [plaintiffs] need not do much.  Aside from stating the nature of his work and the nature of [their employer's] business, plaintiffs must provide only straightforward allegations connecting that work to interstate commerce."  Id. (citations and quotation marks omitted).

Plaintiffs have adequately pleaded that they were employees to whom no statutory exemption applies, insofar as they allege that they were hired as manual workers and worked for defendants from approximately June 2015 through June 2021 (Bello) and approximately 2012 through April 2021 (Galicia).  (See Compl. ¶¶ 11-12; see also Declaration of Fausto Bello, dated Oct. 17, 2022 ("Bello Decl."), Dkt. No. 12-6, ¶ 27; Declaration of Melvin Cano Galicia, dated Oct. 10, 2022 ("Galicia Decl."), Dkt. No. 12-7, ¶ 27.)  In addition, plaintiffs allege that the corporate defendant had a gross annual volume of sales of not less than $500,000 per year during

---

[5] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

the relevant period and was engaged in interstate commerce as defined by the FLSA.  (Compl. ¶¶ 36-37.)  The corporate defendant was alleged to have engaged in interstate commerce through the purchase of "numerous construction items [that] were used at [Pro-Line] such as tubes, crowbars, cement, concrete mixers, levels, hammers, gloves, hand saw, ladders, that were produced outside of the State of New York."  (Id. ¶ 37.)  Likewise, the plaintiffs themselves are alleged to have been engaged in interstate commerce by "servicing out of state job sites on behalf of the Defendants."  (Id. ¶ 38.)

On a motion for default judgment, it is sufficient to plead facts that plaintiffs "handled goods or items that originated out-of-state."  See, e.g., Brummell v. K1 HVAC Inc., No. 19 CV 5488, 2021 WL 3888138, at *3 (E.D.N.Y. Aug. 13, 2021); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (holding that  there is enterprise coverage when  workers "handle goods or materials that have moved or been produced in interstate commerce.")  Accordingly, I find that plaintiffs have established that they are covered employees under the FLSA and the NYLL.

### 3.  Employer Status of Corporate and Individual Defendants

Plaintiffs seek to hold three defendants—one corporate and two individual— liable for unpaid wages.  (Compl. ¶¶ 13-29; Bello Decl. ¶¶ 2, 4-6; Galicia Decl. ¶¶ 2, 4-6.)  To establish the corporate defendant's liability under the FLSA and NYLL, plaintiffs must allege that Pro-Line was an "enterprise engaged in commerce or in the production of goods for commerce" with the applicable statutory definition.  29 U.S.C. § 203(s)(1).  As discussed above, plaintiffs have sufficiently established that Pro-Line was their employer and was engaged in commerce.  (See Compl. ¶¶ 36-37; Bello Decl. ¶¶ 25-28; Galicia Decl. ¶¶ 25-28.)

To hold the individual defendants liable under the FLSA and NYLL, plaintiffs

must allege that the individual defendants were his "employers" within the broad meaning of 29 U.S.C. § 203(d).  See Fermin, 93 F. Supp. 3d at 35-37.  The Second Circuit has set forth a series of non-exclusive factors for evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists.  See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).  These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  Here, plaintiffs allege that the individual defendants both had the authority to and did hire them, set their pay rates, issue their pay, own and control Pro-Line, authorize job site changes, set their schedules, assign tasks, maintain records, supervise the job site, and discipline employees.  (Compl. ¶¶ 15-29; Bello Decl. ¶¶ 10-23; Galicia Decl. ¶¶ 10-23.)  Thus, plaintiffs have alleged that both individual defendants exercised sufficient control over plaintiffs to find that they were plaintiffs' employers.  Accordingly, plaintiffs have established the liability of the corporate defendants as well as the individual defendants under the FLSA and NYLL.

### B.  Damages

Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his or her] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs. v.

Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Plaintiff Bello requests damages in the total amount of $458,615.94 for unpaid minimum wage and overtime violations, unpaid spread of hours pay, late pay, liquidated damages, and wage notice and statement violations. (Pls.' Mem. at 14; see also Bello Damages at 2.) Plaintiff Galicia requests $442,142.13 for unpaid minimum wage and overtime violations, unpaid spread of hours pay, late pay, liquidated damages, and wage notice and statement violations. (Pls.' Mem. at 14; see also Galicia Damages at 2.) I will address each category of damages in turn for both plaintiffs.

    1. Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted). Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiffs' recollection and estimates of hours worked. Bello asserts that he worked six days a week from roughly 5:00 a.m. to between 4:30 p.m. and 9:00 p.m., typically amounting to 70-72 hours per week. (Compl. ¶¶ 58-60; see also Bello Decl. ¶ 31.) Galicia asserts that he worked either five or six days per week from roughly 5:00 a.m. to between 5:00 p.m. and 9:00 p.m., typically amounting to 70-72 hours

per week.  (Compl. ¶¶ 43-45, Galicia Decl. ¶ 31.)

a.  _Minimum Wage_

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work.  29 U.S.C. § 206; N.Y. LAB. L. § 652.  At all times relevant to this action, the FLSA required defendants to pay plaintiffs a minimum hourly wage of $7.25.  29 U.S.C. § 206(a)(1).  However, New York law obligated defendants to pay plaintiffs a minimum hourly wage of $8.75 from December 31, 2014 to December 30, 2015; $9.00 from December 31, 2015 to December 30, 2016; $11.00 from December 31, 2016 to December 30, 2017; $13.00 from December 31, 2017 to December 30, 2018; and $15.00 from December 31, 2018 to the end of plaintiffs' period of employment.[6]  N.Y. LAB. L. § 652(1)(a)(i).  Because New York's minimum wage is higher than the federal minimum wage, plaintiffs may recover those amounts.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

To determine whether defendants paid plaintiffs at least minimum wage, it is first necessary to determine their regular hourly rates of pay.  Under both federal and New York law, when an employee is paid a flat, daily rate, irrespective of the number of hours actually worked, that employee's regular rate is computed by "totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked."  29 C.F.R. § 778.112; see also N.Y.C.R.R. tit. 12, § 142-2.2.

---

[6] This is the minimum wage for "large employers."  A "large employer" is defined as an "employer of eleven or more employees," N.Y. LAB. L. § 652(1)(a)(i).  Plaintiffs allege that defendants employed at least twenty-four (24) employees at all times relevant to this action. (See Bello Decl. ¶ 9; see also Galicia Decl. ¶ 9.)  Therefore, defendants are a large employer under the NYLL.

| Regular Hourly Rate of Pay Calculations – Both Plaintiffs | | | | | |
|---|---|---|---|---|---|
| Pay Period | | Credited Pay | Hours Worked per Week | Calc. Regular Rate of Pay | Minimum Wage Rate (NYLL) |
| From | To | | | | |
| 12/27/2015 | 12/30/2015 | $780 | 70 | **$11.14** | $8.75 |
| 12/31/2015 | 12/30/2016 | $780 | 70 | **$11.14** | $9.00 |
| 12/31/2016 | 12/30/2017 | $780 | 70 | **$11.14** | $11.00 |
| 12/31/2017 | 12/30/2018 | $780 | 70 | $11.14 | **$13.00** |
| 12/31/2018 | 12/30/2019 | $780 | 70 | $11.14 | **$15.00** |
| 12/31/2019 | 12/30/2020 | $780 | 70 | $11.14 | **$15.00** |
| 12/31/2020 | 6/15/2021 | $780 | 70 | $11.14 | **$15.00** |

Both plaintiffs allege that they were paid a daily rate of $130, amounting to $780 per five- or six-day workweek.  (Bello Decl. ¶ 11; Galicia Decl. ¶ 11.)  As reflected in the above chart, plaintiffs allege that they worked more than forty hours per week.  (Bello Decl. ¶ 5; Galicia Decl. ¶ 5.)  Therefore, their regular hourly rates of pay are calculated using seventy hours, which reflects the total hours actually worked per week.  Based on plaintiffs' submissions and my own calculations, I find that defendants paid plaintiffs a regular hourly rate of pay that was greater than the wage required by New York law until December 31, 2017, when the minimum wage increased to $13 an hour.  Therefore, I respectfully recommend that plaintiffs not be awarded any damages for unpaid minimum wages for the employment period predating December 31, 2017.

However, for the employment period starting December 31, 2017, I find that defendants did not pay plaintiffs a regular hourly rate of pay that was greater than the wage required by New York law, and plaintiffs are owed damages for minimum wage violations from that point until the respective ends of their employment.  Therefore, I respectfully recommend that Plaintiff Bello be awarded **$23,632.00** and Plaintiff Galicia be awarded **$22,242.40** for minimum wage violations, in line with the below calculations.

| Minimum Wage Calculations – Plaintiff Bello | | | | | | | |
| Pay Period | | Weeks | Hours | Regular Rate of Pay | Minimum Wage Rate | Hourly Minimum Wages Owed | Minimum Wages Owed |
| From | To | | | | | | |
| 12/31/2017 | 12/30/2018 | 52 | 40 | $11.14 | $13.00 | $1.86 | $3,868.80 |
| 12/31/2018 | 12/30/2019 | 52 | 40 | $11.14 | $15.00 | $3.86 | $8,028.80 |
| 12/31/2019 | 12/30/2020 | 52 | 40 | $11.14 | $15.00 | $3.86 | $8,028.80 |
| 12/31/2020 | 6/15/2021 | 24 | 40 | $11.14 | $15.00 | $3.86 | $3,705.60 |
| Total Minimum Wages Owed | | | | | | | $23,632.00 |

| Minimum Wage Calculations – Plaintiff Galicia | | | | | | | |
| Pay Period | | Weeks | Hours | Regular Rate of Pay | Minimum Wage Rate | Hourly Minimum Wages Owed | Minimum Wages Owed |
| From | To | | | | | | |
| 12/31/2017 | 12/30/2018 | 52 | 40 | $11.14 | $13.00 | $1.86 | $3,868.80 |
| 12/31/2018 | 12/30/2019 | 52 | 40 | $11.14 | $15.00 | $3.86 | $8,028.80 |
| 12/31/2019 | 12/30/2020 | 52 | 40 | $11.14 | $15.00 | $3.86 | $8,028.80 |
| 12/31/2020 | 4/15/2021 | 15 | 40 | $11.14 | $15.00 | $3.86 | $2,316.00 |
| Total Minimum Wages Owed | | | | | | | $22,242.40 |

b. *Overtime Compensation*

Plaintiffs allege that defendants willfully violated the FLSA and NYLL by failing to pay them overtime wages.  (Compl. ¶¶ 69-72; 80-83.)  Plaintiffs are entitled to compensation under the FLSA and NYLL at the rate of one and one-half times their regular rates of pay for the hours they worked in excess of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2.  "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he [or she] is employed.'"  Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).  The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages.  See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at

*15 (E.D.N.Y. Sept. 22, 2017).

Plaintiffs allege that they both worked approximately 70-72 hours per week and that defendants never paid them overtime compensation.  (See Compl. ¶¶ 43, 58, 70-71, 81-82.)  To calculate the overtime compensation they are owed, the number of hours they worked over forty each week is multiplied by 150 percent of the higher of (i) their regular rates of pay, or (ii) the applicable minimum wage.  See Long Lin v. New Fresca Tortillas, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019).  To obtain the total overtime compensation owed for each time period, the weekly amount is multiplied by the number of weeks in that time period.  Based on the Regular Hourly Rate of Pay Calculation above and the calculations in the below table, I respectfully recommend that Bello be awarded **$74,109.24** and Galicia be awarded **$71,042.04** in unpaid overtime wages.

| Overtime Calculations – Plaintiff Bello | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pay Period | | No. Weeks Worked | OT Hours Worked per Week | Effective Rate of Pay | Minimum OT (NYLL) | OT on Effective Rate | Overtime Wages Owed |
| From | To | | | | | | |
| 12/27/2015 | 12/30/2015 | 0.4 | 30 | $11.14 | $13.13 | **$16.71** | $66.84 |
| 12/31/2015 | 12/30/2016 | 52 | 30 | $11.14 | $13.50 | **$16.71** | $8,689.20 |
| 12/31/2016 | 12/30/2017 | 52 | 30 | $11.14 | $16.50 | **$16.71** | $8,689.20 |
| 12/31/2017 | 12/30/2018 | 52 | 30 | $11.14 | **$19.50** | $16.71 | $13,041.60 |
| 12/31/2018 | 12/30/2019 | 52 | 30 | $11.14 | **$22.50** | $16.71 | $17,721.60 |
| 12/31/2019 | 12/30/2020 | 52 | 30 | $11.14 | **$22.50** | $16.71 | $17,721.60 |
| 12/31/2020 | 6/15/2021 | 24 | 30 | $11.14 | **$22.50** | $16.71 | $8,179.20 |
| Total OT Wages Owed | | | | | | | **$74,109.24** |

| Overtime Calculations – Plaintiff Bello | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pay Period | | No. Weeks Worked | OT Hours Worked per Week | Effective Rate of Pay | Minimum OT (NYLL) | OT on Effective Rate | Overtime Wages Owed |
| From | To | | | | | | |
| 12/27/2015 | 12/30/2015 | 0.4 | 30 | $11.14 | $13.13 | **$16.71** | $66.84 |
| 12/31/2015 | 12/30/2016 | 52 | 30 | $11.14 | $13.50 | **$16.71** | $8,689.20 |
| 12/31/2016 | 12/30/2017 | 52 | 30 | $11.14 | $16.50 | **$16.71** | $8,689.20 |

| 12/31/2017 | 12/30/2018 | 52 | 30 | $11.14 | **$19.50** | $16.71 | $13,041.60 |
| 12/31/2018 | 12/30/2019 | 52 | 30 | $11.14 | **$22.50** | $16.71 | $17,721.60 |
| 12/31/2019 | 12/30/2020 | 52 | 30 | $11.14 | **$22.50** | $16.71 | $17,721.60 |
| 12/31/2020 | 4/15/2021 | 15 | 30 | $11.14 | **$22.50** | $16.71 | $5,112.00 |
| **Total OT Wages Owed** | | | | | | | **$71,042.04** |

2. Spread of Hours

Plaintiffs also seek spread of hours pay under the NYLL. (Compl. ¶¶ 90-91.) "The spread of hours is the length of the interval between the beginning and end of an employee's workday." N.Y.C.R.R. tit. 12, § 146-1.6(a). "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." Id. Plaintiffs allege that every day that they worked, they worked a minimum of ten hours, with most shifts spanning greater than ten hours. (Compl. ¶¶ 44-45, 59-60.) Galicia asserts that he worked shifts longer than ten hours at least five days a week and sometimes six days a week (id. ¶ 44; see also Galicia Decl. ¶ 31), and Bello alleges that he worked shifts longer than ten hours six days a week. (Compl. ¶ 59; see also Bello Decl. ¶ 31.) Nonetheless, plaintiffs allege that defendants never compensated them with "spread of hours" pay for days that exceeded ten hours. (Galicia Decl. ¶ 6; Bello Decl. ¶ 6.) For each day plaintiffs worked a shift of more than ten hours, plaintiffs are entitled to an additional hour of pay at the minimum wage rate. Therefore, I respectfully recommend that Bello be awarded **$21,837.00** and Galicia be awarded **$21,027.00** in spread of hours damages, consistent with the calculations below.

| Spread of Hours Calculations – Plaintiff Bello | | | | | |
|---|---|---|---|---|---|
| Pay Period | | No. of Weeks | SOH Days per Week | Minimum Wage Rate | SOH Owed |
| From | To | | | | |
| 12/27/2015 | 12/30/2015 | 0.4 | 6 | $8.75 | $21.00 |
| 12/31/2015 | 12/30/2016 | 52 | 6 | $9.00 | $2,808.00 |
| 12/31/2016 | 12/30/2017 | 52 | 6 | $11.00 | $3,432.00 |
| 12/31/2017 | 12/30/2018 | 52 | 6 | $13.00 | $4,056.00 |
| 12/31/2018 | 12/30/2019 | 52 | 6 | $15.00 | $4,680.00 |
| 12/31/2019 | 12/30/2020 | 52 | 6 | $15.00 | $4,680.00 |

| 12/31/2020 | 6/15/2021 | 24 | 6 | $15.00 | $2,160.00 |
|---|---|---|---|---|---|
| **Total** | | | | | **$21,837.00** |

| Spread of Hours Calculations – Plaintiff Galicia | | | | | |
|---|---|---|---|---|---|
| Pay Period | | No. of Weeks | SOH Days per Week | Minimum Wage | SOH Owed |
| From | To | | | | |
| 12/27/2015 | 12/30/2015 | 0.4 | 6 | $8.75 | $21.00 |
| 12/31/2015 | 12/30/2016 | 52 | 6 | $9.00 | $2,808.00 |
| 12/31/2016 | 12/30/2017 | 52 | 6 | $11.00 | $3,432.00 |
| 12/31/2017 | 12/30/2018 | 52 | 6 | $13.00 | $4,056.00 |
| 12/31/2018 | 12/30/2019 | 52 | 6 | $15.00 | $4,680.00 |
| 12/31/2019 | 12/30/2020 | 52 | 6 | $15.00 | $4,680.00 |
| 12/31/2020 | 4/15/2021 | 15 | 6 | $15.00 | $1,350.00 |
| **Total** | | | | | **$21,027.00** |

3. Liquidated Damages

Plaintiffs additionally request liquidated damages for unpaid minimum wage, overtime, and spread of hours pay. (See Mulholland Aff. ¶¶ 66-68; Bello Damages; Galicia Damages); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same period). Plaintiffs may recover liquidated damages in the amount of 100 percent of unpaid wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). The NYLL also authorizes liquidated damages for spread of hours claims. See, e.g., Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016).

Here, defendants have not answered or otherwise appeared in this action and thus cannot demonstrate a "good faith" basis for believing the underpayment of wages was lawful. I accordingly recommend that Bello be awarded **$119,578.24** and Galicia be awarded **$114,311.44**

in liquidated damages, which is the amount equal to their unpaid wages and spread of hours pay, as represented below.

| Plaintiff | Liquidated Damages on Unpaid Wages | Liq. Damages on Spread of Hours | Total Liquidated Damages |
|-----------|-----------|-----------|-----------|
| Bello | $97,741.24 | $21,837.00 | $119,578.24 |
| Galicia | $93,284.44 | $21,027.00 | $114,311.44 |

4.   Timeliness of Wages under NYLL § 191

Under New York Labor Law § 191, employers are required to pay employees classified as "manual workers" on a weekly basis.  N.Y. LAB. L. §§ 191(1)(a), 198(1-a).  A manual worker is one who is "a mechanic, workingman or laborer."  N.Y. LAB. L. §§ 190(4).  A New York State intermediate court—the Appellate Division's First Department—has read § 198(1-a) to cover all violations of article 6 of the NYLL, including underpayment by way of late payment.  See Vega v. CM & Assocs. Constr. Mgmt, LLC, 107 N.Y.S.3d 286, 287 (1st Dep't 2019) (reading a private right of action stemming from untimely payment of wages under NYLL § 191.)  In so interpreting, the First Department permits an employee to seek liquidated damages for late payment of wages "regardless of whether an employee has been paid wages owed before the commencement of the action."  Id. at 288.  This remedy seeks to compensate employees not only for nonpayment of wages but also for "the loss of the use of the money to which [they were] entitled."  Id. at 288, n.2.

Since the First Department's decision in Vega, courts in this Circuit have followed this construction of the New York Labor L aw.  See e.g., Levy v. Endeavor Air Inc., No. 21 CV 4387, 2022 WL 16645829, at *4 (E.D.N.Y. Nov. 1, 2022) (holding that the harm arising out of claims under NYLL § 191 for failure to timely pay wages are sufficiently concrete to support Article III standing); Carrera v. DT Hosp. Grp., No. 19 CV 4235, 2021 WL 6298656

(S.D.N.Y. Nov. 1, 2021) (awarding unpaid regular and overtime wages as well as liquidated damages for untimely payments); Caul v. Petco Animal Supplies, Inc., No. 20 CV 3534, 2021 WL 4407856, at *2-3 (E.D.N.Y. Sept. 27, 2021); Mabe v. Wal-Mart Assocs., Inc., No. 20 CV 591, 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18, 2021); Sorto v. Diversified Maint. Sys., LLC, No. 20 CV 1302, 2020 WL 7693108, at *2-3 (E.D.N.Y. Dec. 28, 2020); Duverny v. Hercules Med. P.C., No. 18 CV 7652, 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020); Scott v. Whole Foods Mkt. Grp., Inc., No. 18 CV 86, 2020 WL 9814095, at *3 (E.D.N.Y. Feb. 5, 2020).

      Plaintiffs both assert that they were manual workers within the meaning of the NYLL throughout their employment with Pro-Line because they operated heavy machinery, including concrete mixers and concrete pump machines.  (Compl. ¶¶ 40-41, 55; see also Bello Decl. ¶ 4; Galicia Decl. ¶ 4.)  Both allege that defendants failed to timely pay them three weeks out of the month and that defendants were typically a week or two behind in paying wages. (Bello Decl. ¶ 33; Galicia Decl. ¶ 33.)  This means that plaintiffs allege they were untimely paid approximately seventy-five percent of the time throughout their employment and are owed an amount of liquidated damages equivalent to seventy-five percent of all wages earned during the relevant time period.  (See Mulholland Aff. ¶ 63.)  Accordingly, I respectfully recommend that Bello being awarded **$166,374.00** and Galicia be awarded **$161,109.00** in liquidated damages on this claim, consistent with the calculations below.

**Plaintiff Bello**

| Pay Period | | No. of Weeks | Credited Weekly Pay | Late Pay (Credited Weekly Pay x No. of Weeks x 0.75) |
|---|---|---|---|---|
| From | To | | | |
| 12/27/2015 | 12/30/2015 | 0.4 | 780 | $234.00 |
| 12/31/2015 | 12/30/2016 | 52 | 780 | $30,420.00 |
| 12/31/2016 | 12/30/2017 | 52 | 780 | $30,420.00 |
| 12/31/2017 | 12/30/2018 | 52 | 780 | $30,420.00 |

| 12/31/2018 | 12/30/2019 | 52 | 780 | $30,420.00 |
|---|---|---|---|---|
| 12/31/2019 | 12/30/2020 | 52 | 780 | $30,420.00 |
| 12/31/2020 | 6/15/2021 | 24 | 780 | $14,040.00 |
| **Totals** | | | | **$166,374.00** |

**Plaintiff Galicia**

| Pay Period | | No. of Weeks | Credited Weekly Pay | Late Pay (Credited Weekly Pay x No. of Weeks x 0.75) |
|---|---|---|---|---|
| From | To | | | |
| 12/27/2015 | 12/30/2015 | 0.4 | 780 | $234.00 |
| 12/31/2015 | 12/30/2016 | 52 | 780 | $30,420.00 |
| 12/31/2016 | 12/30/2017 | 52 | 780 | $30,420.00 |
| 12/31/2017 | 12/30/2018 | 52 | 780 | $30,420.00 |
| 12/31/2018 | 12/30/2019 | 52 | 780 | $30,420.00 |
| 12/31/2019 | 12/30/2020 | 52 | 780 | $30,420.00 |
| 12/31/2020 | 6/15/2021 | 24 | 780 | $8,775.00 |
| **Totals** | | | | **$161,109.00** |

     5.  <u>Wage Notices & Wage Statements</u>

        Plaintiffs also seek $10,000 total in statutory damages for defendants' failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3).  (Compl. ¶¶ 93-98; <u>see also</u> Mulholland Aff. ¶ 55.)  New York's Wage Theft Prevention Act ("WTPA") § 195(1) requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring.  <u>Deng v. Frequency Elecs., Inc.</u>, No. 21 CV 6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022).  NYLL § 195(3) requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions."  <u>Id.</u>  Plaintiffs assert that they never received a wage notice or wage statements from defendants.  (Mulholland Aff. ¶ 55; Bello Decl. ¶¶ 34-36; Galicia Decl. ¶¶ 34-36; Compl. ¶¶ 94, 97.)

The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation.  See TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).  Consequently, some courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing."  Beh v. Cmty. Care Companions Inc., No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Deng, 2022 WL 16923999, at *9 (finding that plaintiff lacked standing because the "complaint contains no allegations that she was somehow injured merely because of the failure to provide the required notice and statements."); You Qing Wang v. XBB, Inc., No. 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v. NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (". . . based on the record before the Court, it is not clear that [failure to provide wage notices and statements] led to an 'injury' that can be recognized by a federal court.").  These cases rely primarily on the Second Circuit's reasoning in Maddox v. Bank of New York Mellon Tr. Co., N.A., where the court found that the plaintiffs had failed to allege a concrete harm arising out of the defendant's failure to timely present a certificate of discharge to the county clerk, a purely technical violation.  19 F.4th 58, 64-66 (2d Cir. 2021).

Nevertheless, other courts in this Circuit have continued to grant damages for wage statement and notice violations.  See, e.g., Black v. 7714 Ent., Corp., No. 21 CV 4829, 2022 WL 3643969 (E.D.N.Y. Aug. 24, 2022); Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099 (E.D.N.Y. Mar. 24, 2022); Santos v. Cancun and Cancun Corp., No. 21 CV

192, 2022 WL 1003812 (E.D.N.Y. Feb. 17, 2022); Lamar v. A&O Brothers Corp., No. 21 CV

169, 2022 WL 1422439 (E.D.N.Y. Feb. 2, 2022); Willians v. Miracle Mile Props. 2 LLC, No. 20

CV 3127, 2022 WL 1003854 (E.D.N.Y. Feb. 1, 2022).

   One such court recently found that claims brought under the WTPA for wage

statement and notice violations do not require plaintiffs to show "the downstream impact on the

plaintiff of the non-provision of the required notice." Bueno v. Buzinover, No. 22 CV 2216,

2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (adopting in part the Report and

Recommendation but reversing the Report's finding that there was no Article III standing with

respect to the wage statement and notice violations). In so finding, the court in Bueno

emphasized that the concrete harm necessary for Article III standing is captured in the legislative

purpose of the WTPA, which provides not only an avenue for employees to recover wages owed

them by their employer but also a means to empower them—namely, through the provision of

written notices with respect to employers' legal obligations—to advocate for themselves. Bueno,

2023 WL 2387113, at *3.

   It is critical to note that the factual circumstances arising out of cases like

TransUnion and Maddox versus those arising in cases under the WTPA are fundamentally

distinct. In TransUnion, the entire class of plaintiffs had alleged that TransUnion had violated its

obligations under the Fair Credit Reporting Act ("FCRA") by maintaining credit files for those

plaintiffs that contained misleading OFAC alerts. TransUnion, 141 S. Ct. at 2208-09. However,

only 1,853 of the class members had actually suffered the reputational harm of having those

misleading OFAC alerts disseminated to third-party businesses, i.e., the harm FCRA sought to

prevent via the disputed provisions. Id. As such, those 1,853 class members were deemed to

have standing, whereas the remainder of the class—whose misleading credit files had not been

disseminated—was deemed not to have standing for failure to allege either actual or imminent harm.  Id. at 2209.  Similarly, in Maddox, the plaintiffs alleged violations of New York's mortgage-satisfaction-recording statutes and had rooted their standing to sue in "impaired access to accurate financial information," "a false impression adverse to their credit status," and "the right to be free of these harms [as] recognized by the state legislature."  Maddox, 19 F.4th at 61, 64-66.  However, the Second Circuit found that the plaintiffs lacked standing because they had failed to plead sufficient facts to show that any of the risks of harm—namely, risk of (1) having "an actionable cloud on title to the property securing the discharged mortgage debt," (2) reputational harm; and (3) difficulty obtaining financing if they so pleased—alleged by the plaintiffs, had or would likely come to fruition.  Id. at 64-66.

The wage statement and notice violations alleged here are of a different class of harm than those alleged in TransUnion and Maddox.  The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL."  Bueno, 2023 WL 2387113, at *3 (quoting Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 CV 5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)).  Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wage they are owed.  Bueno, 2023 WL 2387113, at *3.

Here, although the plaintiffs' wage statement and notice claims allege only the bare assertion that they never received their statutorily required wage statements and notices, the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings.  Had the sole allegation been one of failure to furnish statutorily mandated notices and statements absent the companion allegations of wage theft, plaintiffs may have encountered an issue of standing.  But that is not the case here.  The plaintiffs in this case allege

a years-long practice of failing to pay proper wages, a pattern that was undoubtedly buttressed by their employer's failure to comply with the wage statement and notice provisions of the WTPA, which were designed to prevent this precise form of wage theft by informing employees of their pay rates and deductions. Therefore, I find that the plaintiffs do have Article III standing to raise these statutory violations, and I respectfully recommend that they each be awarded **$10,000** on these claims, $5,000 for wage statement violations and $5,000 for notice violations.

6. Pre-judgment Interest

Plaintiffs request pre-judgment interest. (Compl. ¶¶ 8, 120; Mulholland Aff. ¶¶ 4, 22.) The calculation of pre-judgment interest is based on unpaid wages, but not on liquidated or statutory damages. Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022). The rate of interest is calculated at nine percent per annum, and, where damages were incurred at various times, may be calculated from a single reasonable intermediate date. N.Y. C.P.L.R. §§ 5004, 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest. See Fermin, 93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11. I have determined that the midpoint of Bello's employment was September 20, 2018, and the midpoint of Galicia's employment was August 21, 2018. (See Compl. ¶¶ 39, 54; see also Bello Damages; Galicia Damages.) Accordingly, I respectfully recommend that pre-judgment interest be awarded on Bello's total unpaid wages of $119,578.24 from September 20, 2018 to the date of this court's judgment at a per diem interest rate of **$29.49** ($119,578.24 x 0.09/365), and pre-judgment interest be awarded on Galicia's unpaid wages of $114,311.44 from August 21, 2018 to the date of this court's judgment at a per diem interest rate of **$28.19** ($114,311.44 x 0.09/365).

7. Post-judgment Interest

Finally, plaintiffs request that any amount that remains unpaid upon ninety days following the issuance of judgment or ninety days after the expiration of time to appeal, whichever is later, automatically increase by fifteen percent per NYLL § 198(4).  (See Mulholland Aff. ¶ 85.)  However, courts in this district have decided that "federal law control[s] how a federal judgment should be treated once it [is] entered" and that § 198(4) does not apply to federal judgments.  Chen v. Asian Terrace Rest., Inc., No. 19 CV 7313, 2022 WL 1460272, at *1, 2 (E.D.N.Y. May 9, 2022) ("§ 198(4) is inapplicable to federal judgments) (citing Quesada v. Hong Kong Kitchen, Inc., No. 20 CV5639, 2021 WL 861800, at *2 (E.D.N.Y. Mar. 8, 2021)); see also FCS Advisors, Inc. v. Fair Fin. Co., 605 F.3d 144 (2d Cir. 2010) (per curiam) (finding New York calculation on post-judgment interest invalid in a contract case despite the contract's New York choice of law provision).  Furthermore, the "Second Circuit has noted that even when a tribunal determines to increase judgment payment incentives by increasing the post-judgment interest rate, § 1961 overrides that determination." Chen, 2022 WL 1460272, at *3.  Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a).  Moreover, post-judgment interest under Section 1961 is mandatory.  See Fermin, 93 F. Supp 3d at 53.  Therefore, I respectfully recommend that plaintiffs be awarded post-judgment interest under 28 U.S.C. § 1961.

**C. Attorney's Fees and Costs**

As the prevailing party, plaintiffs are entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL.  See 29 U.S.C. § 216(b), N.Y. LAB. L. §§ 198,

663(1).  Plaintiffs seek an award of $3,975 in attorney's fees and $617 in costs.  (See Attorney's Fees and Costs, Dkt. No. 20-10.)  Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); In re Phelan, 570 N.Y.S.2d 202, 203 (2d Dep't 1991).  Plaintiffs have satisfied this requirement.  (See Attorney's Fees and Costs.)  The court next assesses whether plaintiffs' counsel requests a reasonable hourly rate.  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case."  Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Plaintiffs' counsel requests an hourly rate of $375 for Colin Mulholland.  (See Attorney's Fees and Costs.)  Mr. Mulholland is a solo practitioner, was admitted to practice in February  2013, and has been managing his own employment practice since March 2019.  (See Mulholland Aff. ¶ 78.)  $375 per hour is a reasonable rate for Mr. Mulholland.  See Flores v. Urciuoli, No. 19 CV 6380, 2022 WL 987353, at *7 (E.D.N.Y. Jan. 10, 2022) (holding that $375 per hour was reasonable for a solo practitioner focusing on FLSA and employment cases who was admitted to practice in 2013); Calle v. NDG Coffee Shop, Inc., No. 16 CV 7702, 2018 WL 1779347 (S.D.N.Y. Apr. 12, 2018) (finding an hourly rate of $375 reasonable for an attorney with five years of experience in wage and hour litigation).

The court next looks to the reasonableness of the number of hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

Here, plaintiffs' counsel seeks compensation for 10.6 hours of work, all of which he personally worked.  (See Mulholland Aff. ¶ 77; see also Attorney's Fees and Costs.)  Having reviewed the submitted time records, I find the claimed number of hours reasonable.  See, e.g., Zhang v. Asian Moon Rest. Corp., 20 CV 2776, 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); Ahn v.

Sun Cleaners Inc., 19 CV 5919, 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022) (finding

thirty-five hours to be a reasonable number billed in a single-plaintiff FLSA default case); Du v.

CGS Metal Fabrication Inc., 19 CV 1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022)

(finding 31.1 hours reasonable in a single-plaintiff FLSA default case).  Accordingly, I

respectfully recommend that plaintiff be awarded $3,975 in attorney's fees.

   Plaintiff additionally requests compensation for $617 in costs, representing $402

for this court's filing fee and $215 in service of process fees.  (See Mulholland Aff. ¶ 76; see also

Attorney's Fees and Costs.)  "Ordinarily, plaintiffs may recover costs relating to filing fees,

process servers, postage, and photocopying."  Pichardo v. El Mismo Rincon Latino Corp., No.

17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation

omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see

also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiffs have submitted

sufficient documentation for filing fees and service of process costs.  (See Attorney's Fees and

Costs.)  Accordingly, I find $617 to be reasonable out-of-pocket expenses.

## CONCLUSION

   For the reasons set forth above, I respectfully recommend that plaintiffs' motion

be granted and that default judgments be entered against all defendants, jointly and severally.

Regarding damages, I respectfully recommend that plaintiffs be awarded damages for the

following claims: that Bello be awarded **$415,530.48** in total, representing **$97,741.24** in unpaid

minimum and overtime wage, **$21,837.00** in unpaid spread of hours pay, **$119,578.24** in

liquidated damages on unpaid wages, **$166,374.00** in liquidated damages for untimely payments,

and **$10,000** for wage statement and notice violations; and that Galicia be awarded **$399,731.88**

in total, representing **$93,284.44** in unpaid minimum and overtime wage, **$21,027.00** in unpaid

spread of hours pay, **$114,311.44** in liquidated damages on unpaid wages, **$161,109.00** in liquidated damages for untimely payments, and **$10,000** for wage statement and notice violations.  I further recommend that pre-judgment interest be awarded on plaintiffs' unpaid wages in the following manner: on Bello's unpaid wages of $119,527.63 from September 20, 2018 to the date of this court's judgment at a per diem interest rate of **$29.49**; and on Galicia's unpaid wage of $114,262.63 from August 21, 2018 to the date of this court's judgment at a per diem interest rate of **$28.19**.  I also recommend that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a).  Finally, I recommend that plaintiffs receive **$3,975** in attorney's fees and **$617** in costs.

Plaintiffs are directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed electronically within fourteen days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
June 20, 2023